IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KARI LYNN OVERINGTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1133 RGA |
| | ) | |
| | ) | |
| LEVI FISHER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS LEVI FISHER, JANA SIMPLER
AND NICOLE MAJESKI'S MOTION TO DISMISS**

Defendants Levi Fisher ("Fisher"), Delaware Division of Motor Vehicles ("DMV") Director Jana Simpler ("Director Simpler") and Secretary of the Delaware Department of Transportation ("DelDOT") Nicole Majeski (Secretary Majeski") (jointly "Defendants"), by and through the undersigned counsel, hereby move that Plaintiff Kari Lynn Overington ("Ms. Overington" or "Plaintiff") (D.I. 2) be dismissed. The grounds for this motion are as follows:

**Factual Background:**

1. DMV Regulation number 2285 regulates Vanity License Plates in Delaware. The Regulation expresses the viewpoint neutral intent to "ensure obscene license plates are not issued." Regulation 2285, § 1.1. The issue of vanity license plates and the contents of same, weighed against an individual's First Amendment rights has been considered by a number of jurisdictions of late as individuals seek to push the boundaries of what personal message can be displayed on their vehicle's state-owned license plate. This lawsuit is one of those instances where an individual seeks to push the boundaries of what DMV will permit to be displayed on a vanity license plate, to allow the display of profanity.

1

2. Ms. Overington applied for the vanity license plate "FCANCER" in December 2020, during the COVID 19 pandemic when the staff and resources of all state agencies, including DMV, were being stretched to their breaking point. As a result, the license plate FCANCER was inadvertently approved. As the restrictions of the pandemic were lifted, DMV undertook to review vanity license plates which had been issued to determine if any license plates had been issued which were not in compliance with DMV's regulation. During that review, DMV identified the FCANCER license plate as being in violation of the regulation, and as having been issued in error. DMV then sent a letter to Ms. Overington recalling the license plate. (Exhibit 1).[1] The June 23, 2021 letter indicated that the vanity plate was being recalled and a refund would be issued to Ms. Overington.

3. The letter resulted in Ms. Overington writing to Secretary Majeski on June 30, 2021. Exhibit 2. That email lays out the history of the issuance of the vanity license plate as well as Ms. Overington's opinion that the license plate is not obscene, despite the clear inclusion of a recognized abbreviation of the work "F#&K" in the license plate. After having the opportunity to investigate the issue, Secretary Majeski responded on July 12, 2021 confirming the license plate was issued in error. Exhibit 3. Secretary Majeski's email is significant for it states the standard applied to the decision to revoke the license plate. The license plate was revoked because DMV uses a viewpoint neutral evaluation process and does not allow license plates which contain "obscenity, vulgarity, profanity, hate speech or fighting words." *Id.* Secretary Majeski further

---

[1] Defendants attach the various correspondence which outlines the timeline and reasons provided for the revocation of the license plate. Defendants contend that the correspondence which constitutes the agency action upon which Ms. Overington's complaint is premised are not matters outside of the pleadings such as to convert this motion to a motion for summary judgment under Rule 12(d) as Ms. Overington should have attached the documents which constitute the agency action to her complaint *ab initio* since it is the very agency action of which she is complaining. Moreover, the Complaint references and quotes to the communications but does not attach them. Thus consideration of the documents is not only appropriate as consideration of the allegations in the Complaint and this Motion but required.

discussed and advised that the inclusion of an abbreviation for the profanity "F*@K" was the reason it was recalled. *Id.*  Secretary Majeski also offered to work with Ms. Overington on a revised license plate which would not contain profanity.

4. Ms. Overington then responded on July 13, 2021 to Secretary Majeski contesting the decision to stand by the revocation of the license plate containing the abbreviation for the word "F*@K".  Exhibit 3.  Ms. Overington's Complaint, after the fact, attempts to craftily avoid admitting that the abbreviation she has used clearly stands for the profanity "F*@K".  Secretary Majeski responded to Ms. Overington on July 14, 2021 advising that she had provided the information regarding Ms. Overington's plea to the Office of the Governor.  Exhibit 4.  Ms. Overington then responded via email admitting that the abbreviated "F" on her license plate stood for the profane word "F*@K".  *Id.* Ms. Overington then argues that it doesn't matter what the "F" stands for as she should be permitted to have the license plate issued as the plate doesn't contain the actual word "F*@K". *Id.*

5. At the request of Secretary Majeski, Director Simpler responded to Ms. Overington via email on July 22, 2021. Exhibit 5.  In that email, Director Simpler acknowledged Ms. Overington's admission that the "F" on her license plate stood for the word "F*@K".  Director Simpler then discussed both the standard applied by DMV in determining to revoke the license plate, that license plates may not contain "obscenity, vulgarity, profanity, hate speech or fighting words." *Id.*  Director Simpler then discussed how the word "F*@K" is one that continues to be identified by various agencies, including the Federal Communications Commission ("FCC"), as profanity which is not appropriate or permitted to be used on broadcast television.  Director Simpler confirmed that as the Director, she is the final arbiter of issues involving vanity license plates issued by the DMV.  This lawsuit then followed.

## I. The Motion to Dismiss Standard.

6. Evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Under this standard, the Court is not obligated to accept as true "bald assertions," *Morse v. Tower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false." *Nami v. Fauver,* 82 F.3d 63, 69 (3d Cir. 1996).

## II. Ms. Overington's Complaint fails to state a claim and should be dismissed.

7. Ms. Overington's complaint attempts to ignore her own admissions as to the true meaning of the phrase "FCANCER" and her admission that the "F" does in fact stand for a word that is profanity, "F*@K". Ms. Overington's complaint fails to state a claim as to the statutory challenge and seeking a declaration that the regulation is unconstitutional where the standard that was applied in evaluating her request was not some vague or ambiguous standard but instead a viewpoint neutral standard that Chief Justice Roberts has indicated would exclude certain words as "outside the scope of the First Amendment's protections." *Ogilvie v. Gordon*, 2020 WL 10963945, at * 6 (ND Cal. Nov. 24, 2020), *citing*, *Iancu v. Bruntetti,* 139 S. Ct. 2294, 2303 (2019).

8.  The *Ogilvie* Court, while reserving final decision on the issue, did note that "[m]ost courts that have considered the question have decided that license plates are a nonpublic forum." *Id.* at*4. *See, Bujno v. Commonwealth, Dept. of Motor Vehicles*, 2012 WL 10638166 (Va. Cir. Ct., Nov. 2, 2012); *Perry v. McDonald*, 280 F.3d 159 (2nd Cir., Oct. 17, 2001). "[L]icense plates 'are government property upon which [a state] has allowed some limited private expression in the form of vanity plates." *Id. citing, Hart*, 422 F. Supp. 3d 1227, 1233 (E.D. Kentucky, Nov. 13, 2019). In this instance, DMV, through Director Simpler and DelDOT Secretary Majeski, has applied a viewpoint neutral standard to the non-public forum of vanity license plates to review Ms. Overington's submission. The standard applied at all levels of review was the very standard promulgated by Chief Justice Roberts. Further, Director Simpler and Secretary Majeski, as part of their evaluation of the matter on further review, received written confirmation from Ms. Overington that the "F" in "FCANCER" in fact stood for profanity before rendering a final decision confirming the license plate as withdrawn.

9.  The viewpoint neutral standard applied by Director Simpler and Secretary Majeski is "(1) 'reasonable in light of the purpose served by the forum,' and (2) 'based on a standard that is definite and objective.'" *Ogilvie*, at * 6, *citing Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 499 (9th Cir. 2015). License plates are used to identify vehicles for numerous purposes, including traffic stops by law enforcement, vehicle registration, tracking/charging for use of toll roads and also to generate revenue for DMV. DMV has allowed some level of personal expression on vanity license plates, so long as that expression does not run afoul of the words which Chief Justice Roberts identified as not being entitled to First Amendment protections. Viewpoint neutral review is possible and such a viewpoint neutral review was undertaken with regards to Ms. Overington where a word that the FCC prohibits on broadcast

television was prohibited on a State of Delaware license plate. There is an objective, workable standard to evaluate whether something is obscenity, vulgarity, profanity, hate speech or fighting words and DMV has applied that workable standard in the present instance.

10. Ms. Overington's desire to include a recognized abbreviation for a profanity is similar to the prohibited scatological references discussed by the Second Circuit in *Perry* was found to reflect "a legitimate government concern." *Perry* at 169. The governments' purpose of "protecting the public, especially young children, from offensive and indecent speech" was a valid reason for denial of a vanity plate including the profanity "S#&T." *Id.* Just as the Vermont DMV had the legitimate governmental purpose in not allowing the word "S#&T" on their state's license plates, DMV has a similar interest in not allowing the word "F*@K" on Delaware license plates.

11. As the vanity license plates are a non-public forum, in which DMV retains the right to preclude the use of profanity, which would portray the state in a bad light as endorsing certain language, and the standard applied to Ms. Overington was viewpoint neutral, the claims of Ms. Overington should be dismissed as failing to state a claim.

### III. The claims against the Defendants in their individual capacity should be dismissed pursuant to the doctrine of Qualified immunity.

12. Governmental officials sued in their individual capacity for §1983 claims are entitled to qualified immunity unless certain elements are established. *See Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) ("When an officer's actions give rise to a §1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit."); *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) ("The doctrine of qualified immunity serves to protect officers from civil liability."). Rooted in practical concerns accompanying litigation, qualified immunity is designed to preserve an official's ability to effectively carry out his or her duties, without being unduly hampered by the costs and burdens of

defending each and every lawsuit. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) ("The immunity is intended to protect officials from the potential consequences of suit, including distractions from official duties, inhibition of discretionary action, and deterrence of able people from public service."); *Argueta v. U.S. Immigration & Customs Enft*, 643 F.3d 60, 73 (3d Cir. 2011) ("If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed."). Because qualified immunity is in place to not only immunize an officer from ultimate liability but also to temper the burdens of litigation, including the ever-increasing costs of discovery, the Supreme Court has stressed the importance of resolving the issue of immunity at the earliest possible stage of litigation. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (instructing that district courts should move "expeditiously to weed out suits … without requiring a defendant who rightly claims qualified immunity to engage in expensive and time-consuming preparation to defend the suit on its merits"); *see also Thomas*, 463 F.3d at 291 ("The Supreme Court has admonished that '[until] this threshold immunity question is resolved, discovery should not be allowed.'" (citing *Harlow v. Fitzgerald*, 457 U.S. at 818 (1982)).

13.   At the pleading stage, qualified immunity encompasses two related but distinct inquiries:  First, qualified immunity examines whether the complaint sufficiently pleads a cognizable constitutional claim against the individual governmental defendants. *See Southerland*, 389 F. App'x at 170 ("The Supreme Court has distilled the qualified immunity analysis into two inquiries.  First, the constitutional question is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.").  Second, qualified immunity asks whether the constitutional right at issue was clearly established at the time of the purported misconduct.

7

*See Biddle v. Parker*, 2015 WL 5190694, at * 2 (D. Del. Sept. 4 , 2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." (internal quotation marks and citation omitted)).  If the answer to either of these two inquiries is no, then qualified immunity requires that the action be dismissed with no right to discovery.  *See George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (explaining that the district court's finding that the amended complaint pled a plausible claim was for all intent and purposes an appealable denial of qualified immunity).  This standard gives ample room for mistaken judgments by protecting ***all but the plainly incompetent*** or those ***who knowingly violate the law***.  Hunter v. Bryant, 502 U.S. 224, 229 (1991); *Gilles v. Davis*, 427 F.3d 197, 204 (3d. Cir. 2005).

14. In this case, Ms. Overington omitted the communications with Secretary Majeski and Director Simpler because those communications reveal that none of the Defendants relied upon a standard which any court has held was improper in evaluating and denying a vanity license plate.  To the contrary, the Defendants relied upon the language, taken verbatim from *Ogilvie* citing Chief Justice Roberts as to what types of speech are not protected under the First Amendment.  While Ms. Overington would like to open the debate up to all types of speech and all words used on vanity license plates, the limited issue raised is one of the application of the standard which prohibits "obscenity, vulgarity, profanity, hate speech, and fighting words" to a license plate containing the abbreviation of the word "F*@K".  Defendants relied upon the standard the Courts have followed in upholding the denial of vanity license plates in cases such as *Perry*, which banned scatological references, and *Mitchell v. Maryland Motor Vehicle Admin.*, 126 A.2d 165 (Ct. Sp. App. Md., Nov. 25, 2015), *aff'd,* 148 A.3d 319 (Md. Ct. App, Oct. 28, 2016), which banned the license plate "MIERDA", which is the Spanish word for "S#&T."  Similarly, the courts have

allowed the prohibition of references to alcoholic beverages and controlled substances on license plates. *Higgins v. Driver and Motor Vehicle Services* Branch, 72 P.3d 628 (Or, July 3, 2002). The Defendants prohibiting a vanity license plate containing the abbreviation for a profanity the FCC still prohibits being used on network TV is not a violation of a clearly established constitutional right. As such, Defendants are entitled to the application of the doctrine of qualified immunity as to all claims against them in their individual capacity which seek to recover damages.

15. Ms. Overington in her emails cited to the decision in *Carroll v. Craddock*, which addressed an overbreadth and void for vagueness challenge to a statute in Rhode Island. 2020 WL 5880181 (D. RI, Oct. 2, 2020). Ms. Overington's reliance is misplaced because in the first instance, the standard applied in determining to revoke her license plate was the "obscenity, vulgarity, profanity, hate speech and fighting words" standard discussed in *Ogilvie v. Gordon*, 2021 WL 10963945 (D. Cal.). Additionally, absent in *Carroll*, was the administrative fact finding evidenced by the communications between Secretary Majeski, Director Simpler and Ms. Overington, where the fact that the proposed abbreviation stood for the profane word "F*@K" was confirmed.

16. In this matter, all of the Defendants applied what they understood to be a permissible standard, based upon language provided by Chief Justice Robert, to apply a viewpoint neutral standard of review of speech in a non-public forum. That viewpoint neutral review relied upon, among other things, the FCC which prohibits the use of the word "F*@K" on broadcast television. In this instance, the Defendants cannot be found to have knowingly violated the law and as such, they are entitled to dismissal of all claims against them under the doctrine of qualified immunity.

WHEREFORE, Defendants Levi Fisher, DMV Director Jana Simpler and DelDOT Secretary Nicole Majeski respectfully request that this Honorable Court dismiss Plaintiff's claims.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ George T. Lees III*
George T. Lees III (I.D. #3647)
Deputy Attorney General
Carvel State Building
820 French Street, 6th Floor
Wilmington, DE 19801
George.Lees@Delaware.gov
(302) 577-8400
*Attorney for Defendants Levi Fisher, Jana Simpler and Nicole Majeski*