# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KARI LYNN OVERINGTON,

        Plaintiff,

v.

LEVI FISHER, et al.,

        Defendants.

Civil Action No. 21-1133-GBW

---

Dwayne J. Bensing, ACLU OF DELAWARE, Wilmington, DE; Theresa E. Loscalzo, DILWORTH PAXSON, LLP, Philadelphia, PA

   *Counsel for Plaintiff*

George T. Lees III, DELAWARE DEPARTMENT OF TRANSPORTATION, Dover, DE

   *Counsel for Defendants*

## MEMORANDUM OPINION

May 14, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Plaintiff Kari Overington filed this action against Defendants Levi Fisher, Jana Simpler, (the former and current Director of Delaware's Division of Motor Vehicles, respectively), and Nicole Majeski (the Secretary of the Delaware Department of Transportation).[1] D.I. 2. Plaintiff alleges that her constitutional rights were violated when her vanity license plate "FCANCER" was recalled and seeks a declaration that Del. Code Ann. tit. 21 § 2121 (2024) ("Section 2121") and 2 Del. Admin Code § 2285 ("Reg. 2285") are unconstitutional. *Id.* The parties have cross-moved for summary judgment. The Court **GRANTS** Plaintiff's motion for summary judgment (D.I. 60), except with respect to monetary damages. The Court **GRANTS** Defendants' motion for summary judgment (D.I. 61) as to monetary damages and **DENIES** the motion on all other issues.

## I.   BACKGROUND

Delaware law permits individuals to create vanity license plates, but states that "[i]n its discretion, [DelDOT] may refuse any combination of letters, or letters and numerals." Section 2121. The applicable regulations state that "specialists must be extremely careful when issuing vanity license plates to ensure obscene plates are not issued." Reg. 2285. Reg. 2285 provides that vanity license plates that make unflattering statements about a group or raise politically sensitive issues should be referred to the Dover Administrative Office, but that motor vehicle specialists "may disapprove obscene license plates without referral." *Id.* §§ 1.1, 1.3. Reg. 2285 also states

---

[1] Delaware's Division of Motor Vehicles ("DMV") is a part of the Delaware Department of Transportation ("DelDOT"). Del. Code Ann. tit. 29 (2024) § 8420.

that "[n]o vanity plate shall be issued that is considered to be obscene by the Division of Motor Vehicles." *Id.* § 1.7.

Plaintiff, a cancer survivor, reserved the vanity plate "FCANCER" in December 2020. D.I. 64 at 2. She claimed it stood for "Fight Cancer." *Id.* Plaintiff received her vanity plate and displayed it on her vehicle for more than four months. *Id.* In June 2021, Defendant Fisher, in his official capacity, sent a letter to Plaintiff stating that the DMV would recall the vanity plate because "any plate considered offensive in nature will be denied or recalled if issued in error." *Id.* Plaintiff emailed Secretary Majeski, contending that the vanity plate is not obscene. Secretary Majeski replied confirming that the vanity plate would be recalled because it contained a "perceived profanity." *Id.* at 2-3. Secretary Majeski explained to Plaintiff that the DMV does not allow license plates that contain "obscenity, vulgarity, profanity, hate speech or fighting words." D.I. 62 at 3. The DMV adopted this standard in late 2020. D.I. 68 at 2. Deposition testimony later revealed that there were no DMV-wide definitions of what is obscene, vulgar, profane, or otherwise prohibited. Deposition of Amy Anthony at 156:22-169:2; Deposition of Levi Fisher at 84:8-21. Rather, Defendants and other employees of DelDOT and the DMV who review vanity license plates analyze the proposed text on vanity plates based on "their own judgment." Fisher Dep. at 111:6-19. Defendants, in exercising their judgment, use tools like Urban Dictionary and Google to search for definitions and possible profane implications. *Id.* 48:19-22.

Plaintiff filed this action, seeking a declaratory judgment that Reg. 2285 was unconstitutional, to have her FCANCER vanity plate restored, and to recover her costs and attorneys' fees. D.I. 2. Defendants moved to dismiss. D.I. 8. Plaintiff filed a motion to amend her complaint. D.I. 12. Judge Andrews denied the motion to dismiss and granted the motion to amend, allowing Plaintiff's claims to proceed against Defendants in their official capacities. D.I.

3

16. Plaintiff's operative[2] complaint (D.I. 25) raises three challenges under the First and Fourteenth Amendments: Count I (an as applied challenge), Count II (a facial challenge to Section 2121 and Reg. 2285) and Count III (an arbitrary enforcement challenge). The parties filed cross-motions for summary judgment (D.I. 60, D.I. 61). Judge Andrews heard oral argument on the cross-motions for summary judgment on March 25, 2024 ("Tr."). On April 11, 2024, the case was re-assigned to Judge Williams for resolution through summary judgment.[3]

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' but 'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." *Id.* at 203-04 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal citation omitted).

---

[2] There is some ambiguity as to whether the most recent complaint is Plaintiff's First or Second Amended Complaint, centered on whether the motion to amend actually created a first amended complaint. *See* D.I. 21. In any event, the parties agree that D.I. 25 is now the operative complaint.

[3] The parties agree there are no factual disputes and that the case may be resolved on summary judgment. Tr. 14:24-15:9; Tr. 41:24-42:10.

"If a motion for summary judgment demonstrates that no genuine issue of material fact exists, the nonmoving party must set forth specific facts showing a genuine material issue for trial and may not rest upon the mere allegations or denials of its pleadings." *Harrison v. Miller*, 248 F. App'x 445, 447 (3d Cir. 2007) (applying the same standard to cross-motions for summary judgment). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Bletz*, 974 F.3d at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)). The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [the non-moving] party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating cross-motions for summary judgment, the Court "must consider each motion separately, drawing inferences against each movant in turn." *Butler v. Homesite Ins. Co.*, 809 F. App'x 112, 115 (3d Cir. 2020).

## III.  DISCUSSION

Again, the parties agree there are no factual disputes and that the issues may be resolved on summary judgment. Tr. 14:24-15:9; Tr. 41:24-42:10.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I; *see Gitlow v. New York*, 268 U.S. 652, 664 (1925) (applying the First Amendment against the states via the Fourteenth Amendment). Plaintiff contends that, in recalling and denying her vanity license plate, Defendants, in their official capacities, engaged in impermissible viewpoint discrimination. Plaintiff also contends that Section 2121 and Reg. 2285 are unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments. Plaintiff further contends that the DMV's restrictions on vanity plates are not "reasonable" under

5

the First Amendment. Plaintiff seeks injunctive relief barring Defendants from continuing to enforce Section 2121 and Reg. 2285. Defendants respond that vanity plates are government speech, and that Delaware's statute and regulations regulating vanity plates are narrowly tailored to survive a First Amendment challenge.

The Court hereby finds that (1) the alphanumeric sequence on vanity plates does not constitute government speech; (2) Delaware's statute and regulations regarding the issuance of vanity plates permit discrimination based on viewpoint; and (3) Delaware's regulatory scheme is unconstitutionally overbroad and arbitrarily enforced.

### A. The Alphanumeric Sequences on Vanity Plates in Delaware are Not Government Speech.

The First Amendment does not prohibit the government from "determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). Thus, if the alphanumeric sequence on vanity plates in Delaware is considered government speech, rather than speech by private parties, the First Amendment does not apply. *Id.*

*Walker* evaluated the specialty license plate program of Texas. Under that specialty license program, non-profits submitted specialty plate designs to the Texas DMV Board, which could reject the designs if they "might be offensive to any member of the public . . . or for any other reason established by rule." *Id.* at 205 (citation omitted). The specialty plate designs were akin to the background art of a license plate, with examples such as "plates featuring the words 'The Gator Nation,' together with the Florida Gators logo, and plates featuring the logo of Rotary International and the words 'SERVICE ABOVE SELF.'" *Id.* Once the Texas DMV Board approved of a plate design, that plate design would be available for others to use on their own vehicles. *Id. Walker* did not address the license plate number, the alphanumeric identifier prominently displayed on the

6

plate. *Id.* at 206. In the examples below, *Walker* addressed the background art displayed on the specialty plates, but not the text "BB01B" that could itself be customized. *Id.* at 205-206.



*Id.* at 236. The Supreme Court in *Walker* held that Texas could lawfully prevent the Sons of Confederate Veterans, Texas Division, from creating a specialty license plate design featuring the Confederate battle flag. *Id* at 203.

In determining that the specialty license plate designs were government speech, the Supreme Court considered three factors: (1) whether the government had historically used the designs to "communicate[ ] messages from the States"; (2) whether Texas license plate designs are "often closely identified in the public mind with the [State]"; and (3) the degree to which "Texas maintain[ed] direct control over the messages conveyed on its specialty plates." *Id.* at 211-13 (second alteration in original) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 470-73 (2009)). The Supreme Court found that the first factor weighed in favor of the specialty plates being government speech, because the designs of license plates, outside of the identifiers, "long have communicated messages from the States." *Id.* at 210-11. On the second factor, the Supreme Court found that someone who "displays a message on a Texas license plate likely intends to convey to the public that the State has endorsed that message." *Id.* On the third factor, the Supreme Court found that Texas had effectively controlled the designs of license plates by exercising final approval authority. *Id.* at 213.

Significantly, *Walker* explicitly did not address the alphanumeric text of vanity plates. *Id.* at 204. However, numerous courts since *Walker* have addressed the alphanumeric text of vanity plates, with varied results. *Compare Carroll v. Craddock*, 494 F. Supp. 3d 158, 166 (D.R.I. 2020), *Kotler v. Webb*, No. CV 19-2682-GW-SKX, 2019 WL 4635168, at *7 (C.D. Cal. Aug. 29, 2019), *Ogilvie v. Gordon*, No. 20-CV-01707-JST, 2020 WL 10963944, at *2-5 (N.D. Cal. July 8, 2020), *Gilliam v. Gerregano*, No. M202200083COAR3CV, 2023 WL 3749982, at *10 (Tenn. Ct. App. June 1, 2023), *and Mitchell v. Maryland Motor Vehicle Admin.*, 450 Md. 282, 294, 148 A.3d 319,

8

326–27 (2016) (finding that the alphanumeric text of vanity license plates is private speech) *with Odquina v. City & Cnty. of Honolulu*, No. 22-CV-407-DKW-RT, 2022 WL 16715714, at *7-9 (D. Haw. Nov. 4, 2022) *and Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1207 (Ind. 2015) (finding that the alphanumeric text of vanity license plates is government speech). The majority of these cases have concluded that personalized license plate sequences are private speech, not government speech. This Court agrees with the majority of courts on this issue. The Court finds that the alphanumeric sequences on vanity license plates in Delaware are private speech and not government speech for the following reasons.

First, the alphanumeric sequences on vanity license plates in Delaware have not long been used to convey governmental messages. *Walker* itself noted that "insofar as license plates have conveyed *more than state names and vehicle identification numbers*, they have long communicated messages from the states." 576 U.S. at 210-11. By contrast, in Delaware, there is a fifty (50) year history of vanity plate sequences being selected by motorists, and no history of the government communicating messages through the alphanumeric sequences on license plates. Tr. 18:12-18. Unlike in *Walker*, where state governments have historically used the *design* of license plates to communicate messages, Delaware has not historically used the *text* of vanity license plate numbers to communicate messages. "To the extent the individual registration number configurations broadcast any message at all, it is only because the state has allowed individual drivers to pick some combination of letters and numbers that carries significance to the driver." *Kotler*, 2019 WL 4635168, at *7. Thus, the first factor weighs in favor of finding that the alphanumeric sequences on vanity license plates in Delaware are not government speech.

Second, there is no credible evidence that reasonable viewers expect the government to be sending or endorsing messages via the alphanumeric sequences on vanity license plates. *See id.*

9

("[I]t strains believability to argue that viewers perceive the government as speaking through personalized vanity plates."). While vanity license plates do contain the word "Delaware," the record does not support, for example, the proposition that viewers of the vanity license plate "OMG GO" believe the state is telling others to drive faster. *Have You Seen These Delaware Vanity License Plates?*, Delaware Online (8:57 a.m. ET Feb. 17, 2020), https://www.delawareonline.com/picture-gallery/news/2020/02/11/some-funny-delaware-vanity-license-plates/2856012001/. As the Supreme Court noted in holding that trademarks are not government speech, despite being registered, "[i]f the federal registration of a trademark makes the mark government speech, the Federal Government is babbling prodigiously and incoherently. It is saying many unseemly things. It is expressing contradictory views. It is unashamedly endorsing a vast array of commercial products and services."[4] *Matal v. Tam*, 582 U.S. 218, 236 (2017). To suggest that the state of Delaware is speaking through the alphanumeric sequences on the numerous vanity license plates it issues, all with different messages, does not conform with common sense. Thus, the second factor also weighs in favor of finding that the alphanumeric sequences on vanity license plates in Delaware are not government speech.

Third, although Delaware does exercise some control over the vanity license plates it issues, *see* Section 2121; Reg. 2285, that regulatory control alone is insufficient to transform private messages into government speech. *See Tam*, 582 U.S. at 235 ("[W]e must exercise great caution before extending our government-speech precedents," because "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints."); *cf. Odquina*, 2022 WL 16715714, at *10-11 (finding governmental control where there was an extensive statutory regime,

---

[4] Indeed, there are around 22,000 vanity license plates in Delaware. Tr. 67:13.

10

including stated policy reasons for tight control). Delaware's regulatory "control" of the alphanumeric sequences on vanity plates does not reflect the control that a speaker exercises over their own speech, but only the control that governments exercise or attempt to exercise in a variety of other contexts. *See* D.I. 25, Ex. 2 (Secretary Majeski stating that the DMV now bans only license plates that contain "obscenity, vulgarity, profanity, hate speech or fighting words."). This level of control is insufficient to transform the private speech in the alphanumeric text on vanity license plates in Delaware into governmental speech. *Tam*, 582 U.S. at 235. Thus, the third factor is at most neutral, and does not weigh in favor of finding that the alphanumeric text on vanity license plates in Delaware is government speech.

Accordingly, after weighing the three factors set forth in *Walker*, the Court finds that the alphanumeric sequences on vanity license plates in Delaware are private speech, not government speech.

### B. Delaware's Current Regulatory Scheme is Unconstitutional.

Forum analysis applies to government restrictions on private speech occurring on government property. *Walker*, 576 U.S. at 201. However, "viewpoint discrimination is impermissible in any forum." *Ne. Pennsylvania Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 436 (3d Cir. 2019) (holding that it is error to consider what forum speech is in before deciding if it constitutes viewpoint discrimination). Viewpoint discrimination is an "egregious form of content discrimination" that is "presumptively unconstitutional." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995). It is "'bedrock First Amendment principle' that the government cannot discriminate against 'ideas that offend.'" *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (quoting *Tam*, 582 U.S. at 223). However, "[o]bscene speech, for example, has long been held to fall outside the purview of the First Amendment."

11

*Ashcroft v. ACLU*, 535 U.S. 564, 574 (2002); *see Ogilvie v. Gordon*, 540 F. Supp. 3d 920 (N.D. Cal. 2020) ("[O]bscenity, vulgarity, profanity, hate speech, and fighting words fall outside the scope of the First Amendment's protections.") (citing *Iancu v. Brunetti*, 588 U.S. 388, 401 (2019) (Roberts, J., concurring)).

The Court assumes[5] without deciding that Plaintiff's "FCANCER" license plate would be perceived as "Fuck Cancer" by knowing members of the public, rather than as "Fight Cancer," as she claimed. D.I. 25 ¶¶ 18-19. The Supreme Court has addressed whether the government can ban "fuck" on the grounds it may offend on at least three separate occasions. First, in *Cohen v. California*, the Supreme Court held that California could not ban someone from wearing a jacket that said "Fuck the Draft" on the grounds that it disturbed "the peace or quiet of any neighborhood" with "offensive conduct." 403 U.S. 15, 26 (1971). The Supreme Court noted that "one man's vulgarity is another man's lyric" and held that the state could not "make the simple display here involved of this single four-letter expletive a criminal offense." *Id.* at 25-26. Second, the Supreme Court found that the FCC was able to ban a grossly offensive monologue dealing with sex and excretion, and containing the word "fuck" thirty-three times, from airing on daytime television. *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 745 (1978). The Supreme Court held this despite the concession that the monologue was not obscene, imposing "special treatment of indecent broadcasting" because it is "uniquely accessible to children, even those too young to

---

[5] For purposes of Plaintiff's motion, the Court assumes Defendants' facts are true, and vice versa. However, the Court's opinion does not rest on the construction of FCANCER, as discussed below. Thus, the meaning of FCANCER is not a "material fact" necessitating the denial of summary judgment. *See Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020).

read."[6] *Id.* at 749-50. However, later courts have held that the FCC may not ban "fleeting expletives" under the First Amendment. *See Fox Television Stations, Inc. v. F.C.C.*, 613 F.3d 317, 334-35 (2d Cir. 2010), *vacated on other grounds*, 567 U.S. 239 (2012).

The Supreme Court has also held that the United States Patent and Trademark Office (the "PTO") cannot deny a trademark for "FUCT,"[7] on the grounds that a law which refused trademarks because they were "immoral or scandalous" constitutes viewpoint discrimination. *Brunetti*, 588 U.S. at 394. The Supreme Court found that, because "the Lanham Act allows registration of marks when their messages accord with, but not when their message defy, society's sense of decency or propriety," the bar on immoral or scandalous marks constituted viewpoint discrimination. *Id.* The Supreme Court noted the PTO's inconsistent application of its standards, for example permitting a trademark on "WAR ON TERROR MEMORIAL" but rejecting one on "BABY AL QAEDA." *Id.* at 396. The Supreme Court listed rejected marks and found, that while they "express[ed] opinions that are, at the least, offensive to many Americans," the PTO's rejection of those marks constituted impermissible discrimination against ideas that offend. *Id.*; *see Tam*, 582 U.S. at 243 ("Giving offense is a viewpoint.").

The government attempted to save the "immoral or scandalous" bar by re-defining it to bar "lewd, sexually explicit, or profane" marks. *Id.* at 397. The Supreme Court rejected this attempt, "because the statute says something markedly different." *Id.* Upon finding that the "immoral or scandalous" bar was inherently viewpoint discriminatory, the Supreme Court rejected the

---

[6] Some courts have noted that this purportedly unique justification is significantly weaker in the internet age. *Fox Television Stations, Inc. v. F.C.C.*, 613 F.3d 317, 326 (2d Cir. 2010); *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 259 (2012) (Ginsburg, J., concurring).

[7] Brunetti claimed that the mark represented "Friends U Can't Trust." *See* Reply Brief for Petitioner at *12, *Iancu v. Brunetti*, 588 U.S. 388 (2019) (No. 18-302), 2019 WL 1489050.

proposition that the law should be saved on grounds that there were legitimate portions of the law. *Id.* at 398. The Supreme Court also refused to apply the overbreadth doctrine to save the statute, finding that "[o]nce we have found that a law 'aims at the suppression of' views, why would it matter that Congress could have captured some of the same speech through a viewpoint-neutral statute?" *Id.* at 399 (quoting *Tam*, 582 U.S. at 248 (Kennedy, J., concurring)). The Supreme Court found that the law was "substantially overbroad." *Id.*

With respect to Delaware vanity license plates, none of the special considerations in *Pacifica* apply—license plates are typically not broadcast verbally, nor are they frequently directed at children. *See* 438 U.S. at 749-50. More importantly, *Brunetti* is more directly on point to the instant case. Indeed, Defendants' only response to *Brunetti* is to argue that it is "inapplicable to the case at bar as it [] addressed regulation of private speech, not governmental speech." D.I. 68 at 6. The Court has already addressed and rejected this argument.

As in *Brunetti*, there is evidence that Delaware's regulatory scheme is used to exercise viewpoint discrimination. For example, the letter from Defendant Fisher explained that the DMV would recall the vanity plate if considered "offensive in nature" and the subsequent email from Secretary Majeski confirmed that the vanity plate would be recalled because it contained a "perceived profanity." D.I. 62 at 2-3. Also, Defendant Anthony testified that the license plate "OVADOSE" should be denied as obscene or offensive, unless the plate was requested by a CEO of a company that makes Narcan. Anthony Dep. at 92:16-23. Permitting a license plate that refers to overdoses only when the defendant is the CEO of a pharmaceutical company that tries to prevent overdoses is textbook viewpoint discrimination. *See Brunetti*, 588 U.S. at 396 (castigating the PTO for "reject[ing] marks conveying approval of drug use" but "registering marks with such sayings as "D.A.R.E. TO RESIST DRUGS AND VIOLENCE."). Moreover, Defendants'

14

testimony evidences that what the DMV "consider[s] to be obscene" is context-specific, and not congruent with a generalized public finding of obscenity. *See* Anthony Dep. at 173:6-13 (conceding that the DMV's analysis was not based on how a reasonable person views a vanity plate on the roads, but on what the reviewer sees as inappropriate or offensive).

As in *Brunetti*, Defendants ask the Court to "ignore how the [statute]'s language, on its face, disfavors some ideas." 588 U.S. at 396; D.I. 62 at 6-7 ("DMV amended the criteria it applied and that is where the profanity, obscenity, vulgarity, hate speech and fighting words standard originated."). "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n. 5 (1982). However, the Court cannot accept a proposal "markedly different" from the language of the statute. *Brunetti*, 588 U.S. at 397. Here, the statutory language is clear, and permits the DMV "in its discretion" to "refuse any combination of letters, or letters and numerals."[8] Section 2121. Reg. 2285 fares no better, stating that no "vanity plate shall be issued *that is considered to be obscene by the Division of Motor Vehicles.*" Reg. 2285 § 1.7. Reg. 2285 also states that "[p]lates that make unflattering statements about any particular group or raise politically sensitive issues should be referred" for more stringent review. Reg. 2285 § 1.1. Section 2121 and Reg. 2285, like the statute at issue in *Brunetti*, grant the DMV wide discretion to set its own standards and ban speech it merely

---

[8] This case is thus distinguishable from *Odquina*, 2022 WL 16715714. In *Odquina*, the Hawaiian rules merely banned "vulgar words," and included "minute detail" about "which dictionary should be used" in applying "an objective test of what inference may reasonably be detected by one conversant with whatever linguistic, numerical, or phonetic mode of communication that may apply to the request." *Odquina*, 2022 WL 16715714, at *15. The *Odquina* court noted that if a "[s]tate regulation gave the [DMV] 'discretion' to deny vanity plates containing profanity, and it allowed, but did not require, the City to adopt rules for carrying out its guidance'" it would distinguish the case. *Id.* at *15 n. 16.

15

considers offensive or inappropriate, rather than speech that is objectively obscene or profane under First Amendment precedent. Indeed, there is evidence that Defendants withdrew Plaintiff's vanity plate because it "does not represent the State and the Division in a positive manner" and because it was "offensive in nature." D.I. 25, Ex. 1. Permitting vanity plate messages that represent the state well and are not offensive, while denying those messages that make the state look bad or are offensive, permits viewpoint discrimination. *Tam*, 582 U.S. at 221 (Kennedy, J., concurring) ("The law thus reflects the Government's disapproval of a subset of messages it finds offensive, the essence of viewpoint discrimination."). When a statute permits viewpoint discrimination in this manner, it is facially invalid under *Brunetti*, without any analysis as to whether the unconstitutional applications are "substantial." 588 U.S. at 398 ("[I]t seems unlikely we would compare permissible and impermissible applications if Congress outright banned 'offensive' (or to use some other examples, 'divisive' or 'subversive') speech."); *cf. Perry v. McDonald*, 280 F.3d 159, 170 (2d Cir. 2001) (prohibiting a profane word does not itself "discriminate on the basis of viewpoint."). Thus, in applying the principles set forth in *Brunetti*, the Court finds that the DMV's current regulatory scheme allows for viewpoint discrimination and is facially unconstitutional. *See Ogilvie*, 2020 WL 10963944, at *6 (reaching the same conclusion).

As in *Brunetti*, a "finding of viewpoint bias end[s] the matter" without reaching overbreadth or arbitrary enforcement. 588 U.S. at 398 (recognizing that a ban on "lewd, sexually explicit, or profane marks" would have a stronger constitutional case). Nevertheless, after evaluating Section 2121 and Reg. 2285, this Court finds that they are substantially overbroad and arbitrarily enforced. On their face, Section 2121 and Reg. 2285 permit the DMV to bar any sort of speech. Section 2121 (The DMV, "in its discretion," may "refuse any combination of letters, or

16

letters and numerals"); Reg. 2285 ("The Division is granted the authority by law to refuse any combination of letters or letters and numerals."). "[A]dministrators may not possess unfettered discretion to burden or ban speech, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 763–64 (1988). The record establishes that Section 2121 and Reg. 2285 contain no clear rules defining the types of words that should be denied. Fisher Dep. at 28:4-31:14; Anthony Dep. at 31:10-35:20; Simpler Dep. at 30:1-16; Deposition of Amber Sacco at 25:13-23; *see* D.I. 64 at 15-16 (table giving examples of issued vanity plates that reviewers come to drastically different conclusions when analyzing). Thus, as currently drafted, Section 2121 and Reg. 2285 are constitutionally overbroad and arbitrarily enforced.

As in *Brunetti*, there likely are portions of Section 2121 and Reg. 2285 that could be saved. The DMV's supposed policy of refusing plates with "obscenity, vulgarity, profanity, hate speech or fighting words" may even pass constitutional muster if authorized by statute and regulation. *See Brunetti*, 588 U.S. at 400-01 (Roberts, J., concurring). However, Section 2121 and Reg. 2285, as they are currently drafted, do not represent the DMV's supposed policy or present that narrower issue. Rather, they vest reviewers with nearly unfettered discretion to restrict private speech on vanity plates well beyond the confines of obscenity, profanity, hate speech, or speech otherwise not protected by the First Amendment. Thus, Section 2121 and Reg. 2285 are unconstitutional as currently drafted.

### C. Plaintiff is Entitled to a Permanent Injunction.

Plaintiff has waived her claim to damages and seeks only an injunction. Tr. 14:15-18; *see also* D.I. 67 (failing to address Defendants' argument that the Eleventh Amendment bars monetary

damages in this case). As a result, the Court grants Defendants' motion for summary judgment as to monetary damages.

To receive an injunction a "plaintiff must demonstrate: (1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Upon analyzing the factors that warrant injunctive relief, the Court finds that they weigh in favor of some injunctive relief in this case for the following reasons.

First, "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Second, "no remedy at law can cure . . . First Amendment injury." *Ctr. for Investigative Reporting v. Se. Pennsylvania Transportation Auth.*, 975 F.3d 300, 317 (3d Cir. 2020). Third, the balance of hardships favors Plaintiff, since the only burden to Delaware is the burden of revising its law, while the burden on Plaintiff is the deprivation of her free speech. *Id.* ("[T]he only hardship to SEPTA is the burden of redrafting the political and public debate provisions of its current Advertising Standards, if it chooses to do so. In contrast, the hardship to CIR is considerable in that the current Advertising Standards impermissibly deprive it of its, and other potential speakers', constitutional rights to engage in free speech."). Fourth, the "public interest does not suffer by enforcing the First Amendment's protection against restrictions on speech." *Id.*

Plaintiff also asserts that any injunctive relief should pause the vanity license plate program to permit Delaware to conform its scheme to the First Amendment. Defendants respond that an injunction, if granted, should either invalidate the Delaware vanity license plate program in its

18

entirety, including license plates still on the road, or should prevent the DMV from denying any license plate, including "duplicate[s] or triplicates of the same plate." D.I. 68 at 19; D.I. 72 at 5-6; Tr. 32:24-33:20.

The Court is not persuaded that the two alternate extremes which Defendants propose conform with the Delaware legislature's intent. *See Regan v. Time*, 468 U.S. 641, 652 (1981) (whether "an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent."). Indeed, the Court does not believe that the Delaware legislature delegated such broad discretion to the DMV with the understanding that, if a Court later found some First Amendment violations, all current Delaware vanity license plates would become invalid or would be permitted to be issued in duplicate. Rather, the Court finds it more consistent with the Delaware legislature's intent to enjoin the enforcement of the relevant portions of Section 2121(h) and Section 2121(i), to permit Delaware to consider new amendments that comply with the First Amendment. *See McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990) ("In granting injunctive relief, the court's remedy should be no broader than necessary to provide full relief to the aggrieved plaintiff."); *Carroll v. Craddock*, 494 F. Supp. 3d 158, 167 (D.R.I. 2020) (granting a motion for a preliminary injunction against Rhode Island's vanity license plate program by a plaintiff who sought the vanity license plate "FKGAS"). Therefore, Defendants will be enjoined from issuing new Delaware vanity license plates and recalling already-issued Delaware vanity license plates under Section 2121(h) and Section 2121(i). This injunction will allow time for Delaware to conform its vanity license plate scheme to the First Amendment. The injunction will not affect the renewal of existing Delaware vanity license plates. The Court will issue an Order consistent with this Memorandum Opinion.